UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOURK
-------------------------------------------------------------------------x
ELLIOT ULYSSES CATES                                    :
                                                        :
    Plaintiff,                                         :
                                                        :
                                                        :   08cv1529(HB)
               -against-                               :   <u>OPINION & ORDER</u>
                                                        :
CHERYL WILLIAMS; VANESSA DUNCAN                         :
SMITH, AND TONIETTE HENRY                               :
                                                        :
               Defendants.                              :
-------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      This action, brought by *pro se* Plaintiff Elliot Cates ("Cates") against current or former employees of the United States Postal Service ("USPS"),[1] relates to the circumstances of Cates' termination from probationary employment with the USPS in 2001. Defendants' move to dismiss Cates' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, Defendants' motion to dismiss is GRANTED.

                            **I.    FACTUAL BACKGROUND**

    In 2001, Cates applied for a position as a part time flexible motor vehicle operator with the USPS. (Amended Complaint filed September 10, 2008 ("Am. Compl.") IV. C. at 1; Exhibit to Am. Compl., "PS Form 50: Notification of Personnel Action.") Because the position entailed operation of a motor vehicle, Cates was required to complete and sign PS Form 2480, titled "Driving Record For Positions that Require Driving." (*Id*.; Ex. to Am. Compl. (hereinafter "PS Form 2480.")) PS Form 2480 directs applicants to describe motor vehicle accidents in which

---

[1] Cates originally filed this action against John Potter, the Postmaster General, together with individual Defendants Williams, Duncan-Smith and Henry. On September 10, 2008, Cates filed an Amended Complaint that removed Potter as a Defendant. In his Affirmation in Opposition to the instant Motion to Dismiss dated October 3, 2008, Cates states that his "intent is restitution of [his] civil working experience which was unjustifiably taken away from [him]. If it means putting John Potter's name back on my complaint so be it." The Court construes this statement as an application, pursuant to Fed. R. Civ. P. 15(a)(2), for leave to further amend the Amended Complaint to reinstate John Potter as a named Defendant. *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed.") Defendants are not prejudiced by this amendment because Potter was named as a Defendant in the Original Complaint. Accordingly, Cates' application for leave to amend is GRANTED and Potter will herein be assumed to be a named Defendant.

1

they have been involved during the previous five years.  Although Cates had been involved in five motor vehicle accidents between the months of January and November 2001 while employed as a shuttle driver for a company called New York Airport Service, Cates did not list any accidents on the PS Form 2480. (Am. Compl. IV.B. at 1; PS Form 2480.)  He signed the form and by so doing, certified that the statements made therein were "true, complete, and correct to the best of [his] knowledge and belief and made in good faith."  (*Id.*)  Cates contends that the omission was an unintentional oversight and that several times during the application process he was instructed by USPS personnel to sign forms and complete them at later time. (Am. Compl. IV. C. at 1.)

In late November 2001, "after being sworn in [as a postal employee]," Cates informed USPS human resource specialist Defendant Cheryl Williams that he had been terminated by his previous employer, New York Airport Service.  (Am. Comp. IV. C at 1.C.)  When Williams inquired into the reason for his termination, Cates informed Williams that his former employer had "got wind of [him] coming to the Postal Service" and the owner of the company told him that "'even though every accident may not have been [his] fault'" he was let go pursuant to a company policy to terminate employees who were involved in too many accidents.  (*Id.*) Thereafter, Cates provided the USPS a list of the accidents in which he had been involved while employed as a driver for New York Airport Service.  (*Id.*)

On December 17, 2001, Williams sent Cates a letter notifying him that his employment with the USPS was terminated, effective as of November 23, 2001, for his failure to disclose the accidents on the PS Form 2480.  (Ex. to Am. Compl., Letter from Cheryl D. Williams to Elliot Cates, dated December 17, 2001 (hereinafter the "December 17 Letter")).  Defendant Vanessa Duncan-Smith, also a USPS human resource specialist, signed the letter, indicating her concurrence with the notice of termination.  The December 17 Letter cited the USPS' Employment and Placement Handbook, EL-312, Section 522 which provides that "[i]ntentionally false statements" made in connection with an application for employment are a basis for "disqualification for employment."  (*Id.*)  The December 17 Letter also stated that information obtained by the USPS after Cates' hire demonstrated that Cates was liable for three of the five accidents in the year 2001.  (*Id.*)  Consequently, the December 17 Letter informed Cates that he was "disqualified for consideration for any position requiring driving in the United States Postal Service." (*Id.*)

After his termination, Cates filed an EEO Complaint that led to mediation with the USPS on February 25, 2002. (*See* Am. Compl. IV. C. at 2, referring to "mediation settlement agreement 2/25/02 EEO Case No: (1A-100-0010-02)"). The mediation resulted in a settlement agreement that was signed by Cates and Defendant Toniette Henry, a USPS Human Resources Official, on February 25, 2002. (*See* Decl. of Carolina Fornos, dated September 8, 2008, Ex. C, "Settlement Agreement Form" dated 2/25/02, USPS Case No. 1A-100-0010-02, hereinafter the "Settlement Agreement.")[2] The Settlement Agreement provided that the USPS would re-evaluate Cates' eligibility for employment as a motor vehicle operator if he supplied, by April 15, 2002, either proof of a satisfactory driving history while employed with New York Airport Service or documentation from the company's insurance carrier that demonstrated he was not at fault for more than one accident during the period of his employment. (*Id.*) Cates acknowledges that he did not supply the requisite documentation from his former employer by the April 15, 2002 deadline set by the Settlement Agreement. (Am. Compl. IV. C. at 2.) Cates claims that the delay was caused by his former employer's refusal to supply the documentation in a timely manner, but he contends that the documentation ultimately obtained from New York Airport Service establishes that the accidents were "unreportable" and that no "liability claims" were filed. (Am. Compl. IV. C. at 1.) Cates attached to his Amended Complaint a letter dated March 18, 2002 from New York Airport Service's insurance carrier that confirms that no claims made under the company's policy named Cates as liable for an accident between February 15, 2001 and April 25, 2001, when the policy was cancelled for nonpayment. (Ex. to Am. Compl.) A separate exhibit to Cates' Amended Complaint suggests that this letter was mailed to Defendant Toniette Henry by a member of Senator Charles Schumer's staff on April 2, 2002. (Ex. to Am. Compl.)

On May 13, 2002, Cates wrote to the USPS to complain that the USPS was in breach of the Settlement Agreement and to request that the USPS specifically implement its terms. (See Fornos Decl. Ex. D, U.S. Equal Employment Opportunity Commission Decision, Agency No. 1A-100-0010-02, dated January 23, 2003 ("EEOC Decision")). On August 23, 2002, the USPS issued a decision that found Cates had failed to comply with the terms of the Settlement Agreement by failing to provide documentation about his driving record on or before April 15,

---

[2] A copy of the February 25, 2002 Settlement Agreement was also attached to Cates' original Complaint, filed January 22, 2008.

3

2002. (*Id.*) Cates appealed to the Equal Employment Opportunity Commission ("EEOC") which upheld the USPS's administrative decision in a written decision dated January 23, 2003. (*Id.*) In its decision, the EEOC found that the Settlement Agreement did not obligate the USPS to reconsider Cates' employment because Cates had admittedly failed to furnish the necessary documentation about his driving record within the time specified. (*Id.*) The EEOC Decision further noted that the documentation supplied by Cates did not establish that Cates met the USPS's requirements for positions requiring operation of a motor vehicle. (*Id.*) The EEOC Decision granted Cates the right to file a civil action within ninety calendar days of the date Cates was in receipt thereof. (*Id.*)

To his Amended Complaint Cates has attached four letters from the USPS that indicate Cates has applied for and been denied employment with the USPS on at least four occasions between January 2006 and May 2008. (Exs. to Am. Compl.; Pl.'s Aff. in Opp'n. to Mot. at 2.) In each instance, the USPS based its decision not to rehire Cates on his earlier termination "for cause." (Exs. to Am. Compl.)

On January 22, 2008, Cates filed this action against John Potter, the Postmaster General, together with individual Defendants Williams, Duncan-Smith and Henry for "A) Employment Discrimination (Reprisal, Alcoholism) and B) Civil Right [sic] Violations – Defamation of Character, unsubstantiated information." (Compl. II. B.) On September 10, 2008, Cates filed an Amended Complaint that removed Potter as a defendant and revised his allegations against the individual Defendants. The Amended Complaint lists the following as the basis for federal question jurisdiction: "A) Employment Placement Handbook, EL-312, Section 522, Intentional false statements, deception or fraud in application, etc. – Contradiction; B) Civil Right [sic] Violation – Defamation of Character, unsubstantiated accusations" The Amended Complaint seeks the following relief:

> A) asking the defendants to justify before [a] court of law proving my intentions were to deceive the U.S. Postal Service; B) asking Court to order U.S. Postal Service to expunge those unsubstantiating [sic] remarks on my P.S. Form 50 and replace with resignation; . . . C) [monetary compensation including] reimbursement of lost wages since 2001 retroactive including retirement benefits [and] $5,000,000 for durest, [sic] anxieties, depression, lost time; D) Letter of apology from the 'New York District' or USPS itself; [and] E) Immediate reinstatement [to the USPS].

4

Defendants now move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). However, to survive dismissal a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v.* Twombly,127 S.Ct. 1955, 1965 (2007).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" *Newman & Schwartz v. Asplundh Tree Expert Co., Inc*., 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Also properly considered are "documents plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit." *Goldstein v. Pataki*, 516 F.3d 50, 53 n1. (2d Cir. 2008) (internal citations and quotation marks omitted).[3]

## III.   DISCUSSION

### A. Plaintiff's Claims

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (internal citations omitted)). Courts must interpret *pro se* pleadings "'to raise the strongest arguments that they suggest.'" *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Although they should be generously construed, *pro se* pleading "must still abide by the Federal Rules of Civil Procedure." *Jones v. Consumer Information Dispute Resolution*  2007 WL 2398811, 1 (S.D.N.Y. 2007) (citing *McNeil v. United States,* 508 U.S. 106, 113 (1993)).

---

[3] In deciding the instant motion, the Court may properly consider the EEOC Decision because not only did Plaintiff rely upon it in bringing suit, but they are also a matter of public record. *See Nghiem v. U.S. Dept. of Veteran Affairs*, 451 F.Supp.2d 599, 606 n.3 (S.D.N.Y. 2006) (citing *Blue Trees Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)).

At root, Cates sues to clear his name and obtain relief from the lasting effects of the stated basis for his termination in 2001 which continue to frustrate his efforts to secure employment with the USPS.[4] Construed generously, to the extent that Cates claims that he was not afforded a sufficient opportunity to establish that he did not intentionally falsify his application and that he in fact met the USPS requirements for positions that require driving, the Amended Complaint asserts a procedural due process claim under the U.S. Constitution.[5] Namely, the Amended Complaint can be, when liberally construed, read to allege a so-called "stigma-plus" claim that the USPS defamed Cates in the course of his termination without affording him adequate opportunity to clear his name, depriving him of his liberty interest in his professional reputation without due process of law. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972))

The Defendants do not construe the Amended Complaint to assert a "stigma-plus" due process claim, but rather read it to assert a tort claim for defamation.[6] Although the Amended Complaint contains no allegation that the USPS discriminated against Cates on the basis of his race, gender, religion or national origin, the Defendants also construe the Amended Complaint to

---

[4] "[T]hose defaming [sic] remarks on my PS Form 50 is [sic] a permanent scar to my character permanently blocking me from future employment in the federal sector." (Am. Compl. III. C.)

[5] Cates contends that he was injured because the "Postal Service should have investigated [the] accidents themselves" and claims that, "as a formal postal worker they never gave [him] the benefit of the doubt," the Defendants "were bitterly apathetic about [him]," and he "[does not] believe [he] will ever get a fair appraisal form any government facility, city and state included." (Am. Compl. IV. B.)

[6] Although of course all attorneys must adhere to the canons of ethics, the United States Attorney's Office does not share the Court's obligation to interpret pro se pleadings to assert the strongest possible arguments they suggest. In the Southern District of New York, however, all counsel who oppose a *pro se* litigant must comply with Local Rule 7.1(c), which requires counsel to provide *pro se* litigants with printed copies of decisions cited in the counsel's submissions to the Court when those decisions are unreported or reported exclusively on computerized databases. *See Lebron v. Sanders*, 2009 WL 399215 (2d Cir. February 19, 2009). The Assistant United States Attorney ("AUSA") does not appear to have provided Cates with printed copies of the unreported decisions cited in its memoranda of law in support of the instant motion. Although most of the unreported decisions in those memoranda were cited in further support of propositions also supported by published decisions, and, unlike the *pro se* litigant in *Lebron*, Cates did not request copies of the unpublished decisions from either Defendants or the Court, I am, of course, sensitive to the concerns articulated by the Second Circuit in *Lebron* and the challenges that face *pro se* litigants more generally. Consequently, within two days of the date of this Opinion, the AUSA assigned to this case is instructed to furnish Cates with printed copies of all unpublished cases cited in their brief. Cates will be granted ten business days from his receipt of such materials to file a supplemental opposition based solely on arguments in opposition to application of legal principles set forth in the unreported cases cited by Defendants. If such a supplemental opposition is timely filed, Defendants shall have five business days to file a supplemental reply.

assert employment discrimination claims under Title VII of the Civil Rights Act of 1964. Cates' Original Complaint lists "Employment Discrimination (Reprisal, Alcoholism)" as a basis for federal court jurisdiction. To the extent this claim is re-alleged in the Amended Complaint, the Court liberally construes this pleading to assert a claim under the Rehabilitation Act, which covers claims of disability discrimination against federal employers such as the USPS. The Court also liberally construes the Amended Complaint to assert a breach of contract claim for USPS's alleged breach of the Settlement Agreement. Each of the potential claims raised by the Amended Complaint is addressed in turn.

### B. Proper Defendants

Cates has sued Defendants Williams, Duncan-Smith, and Henry (collectively, the "Employee Defendants") for actions taken during the course of their employment with the USPS. Additionally, as discussed above, Cates' Original Complaint named John Potter, the Postmaster General, as a Defendant and the Court grants his application to further amend the Amended Complaint to reinstate Potter as a defendant in this action. The United States Attorney has appeared in this action and filed the instant motion to dismiss.

Cates may assert constitutional claims against the Employee Defendants under the holding of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), which gives "victims of a constitutional violation by a federal agent" the right to sue in federal court "despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Siegert v. Gilley*, 500 U.S. 226, 228 (1991) (characterizing stigma claim against federal government as a *Bivens* action). However, the Employee Defendants are entitled to qualified immunity, *Sullivan v. U.S. Postal Service*, 944 F.Supp. 191, 195 (W.D.N.Y. 1996) (postal employee entitled to qualified immunity), and thus will be immune from suit if (1) their actions did not violate clearly established law or (2) it was objectively reasonable for them to believe that their actions did not violate clearly established law. *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir. 2007).

To the extent that Cates asserts tort claims against the Employee Defendants for conduct within the scope of their employment, the United States is the proper defendant. Pursuant to 28 U.S.C. §2679(c), upon certification by the "Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the United States "shall be substituted as the party defendant in any civil action or

proceeding" arising out of such a claim. An express petition for certification is not required and a brief on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment. *B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc.* 23 F.3d 709, 715 -716 (2d Cir. 1994). Here, the Defendants' brief maintains that, as federal employees, the Employee Defendants are immune from suit under the Federal Tort Claims Act, (Defs.' Opp'n. at 14), and the pleadings make clear that the Employee Defendants are USPS human resources employees who are sued for personnel decisions. Consequently, the United States must be substituted as the party defendant with respect to Cates' potential tort claim of defamation.

Finally, in an action under Title VII or the Rehabilitation Act, the head of the department is the only proper named defendant. *See*, *Garcia v. S.U.N.Y. Health Sciences Center,* 280 F.3d 98 (2d Cir. 2001); *Nghiem v. U.S. Dept. of Veterans Affairs*, 451 F.Supp.2d 599, 605 (S.D.N.Y. 2006). Accordingly, to the extent that Cates asserts claims of discrimination under either statute, the Postmaster General, John Potter, is the only proper Defendant.

### C. "Stigma-Plus" Due Process Claims

"Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). The Second Circuit has recognized that "a probationary employee can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.'" *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006) (quoting *Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir. 2004)). Courts refer to this type of action as a "stigma-plus claim" because "it involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *Id.* (quoting *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003)) (internal quotation marks omitted).[7]

---

[7] However, neither simple defamation by governmental actors nor the "deleterious effects which flow directly from a sullied reputation" alone are sufficient to support a procedural due process claim. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). In *Paul v. Davis*, 424 U.S. 693, 708-12 (1976), the Supreme Court made clear that its prior cases dealing with "stigma" resulting from defamation by government officials did "not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."

      1. Protectable Liberty Interest

Construed liberally, Cates' Amended Complaint alleges facts that meet each of the elements required to establish the deprivation of a liberty interest protected by the Due Process Clause. *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (citing *Patterson*, 370 F.3d at 330). First, Cates alleges that the USPS made stigmatizing statements "that call into question [his] good name, reputation, honor, or integrity," *Patterson*, 370 F. 3d at 330 (internal quotation omitted), by stating that he was terminated for intentionally falsifying his employment application when in fact the omission was an inadvertent oversight.[8]  Second, Cates alleges that such statements were "made public" when they were placed in Cates' USPS personnel file, which is accessible to other USPS facilities. *Segal*, 459 F.3d at 213 ("[T]he placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim" where prospective employers are likely to have access to the file.) Third, Cates alleges that "the stigmatizing statements were made concurrently in time to [his] dismissal from government employment." *Patterson*, 370 F.3d at 330.

Cates does not allege that the USPS's statements have precluded him from securing employment as a driver outside the "federal sector" or from obtaining non-driving positions at the USPS. (Am. Compl. III.C. (referring to USPS's offer of a custodial position)). Nevertheless, construing the Amended Complaint liberally and drawing all reasonable inferences in his favor, Cates sufficiently alleges that the USPS "impugn[ed] [his] professional reputation in such a fashion as to effectively put a significant roadblock in [his] continued ability to practice . . . his profession" because the allegedly stigmatizing statements have precluded him from securing employment as a postal motor vehicle operator. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996) (citing *Huntley v. Community School Bd. of Brooklyn, New York School Dist. No. 14*, 543 F.2d 979, 985 (2d Cir. 1976) (finding there is a significant difference between a teaching position and a supervisory position). Meaningful distinctions exist between federal and private-sector employment and between the USPS positions of motor vehicle operator and custodian. As the Second Circuit noted in *Donato*, "'[d]ue process protects the freedom 'to engage in *any* of the common occupations of life.'" *Id.* (quoting *Meyer v.*

---

[8] "A plaintiff is generally required only to raise the falsity of these stigmatizing statements as an issue, not prove that they are false" because that is the function of the hearing to which the plaintiff claims an entitlement. *Patterson*, 370 F. 3d at 330

9

*Nebraska,* 262 U.S. 390, 399 (1923)) (emphasis in original).  Cates' Amended Complaint thus implicates a liberty interest which may not lawfully be deprived without due process of law.

2. Adequacy of Due Process

To successfully allege a stigma-plus claim, Cates must also demonstrate that his liberty interest was deprived without sufficient legal process.  "[T]he availability of adequate process defeats a stigma-plus claim." *Segal*, 459 F.3d at 213.  To the extent that he was deprived of a protectable liberty interest, as an at-will government employee Cates was entitled to a "reasonably prompt, post-termination name-clearing hearing." *Segal v. City of New York*, 459 F.3d 207, 218 (2d Cir. 2006).  Here, Cates was offered the opportunity to challenge the basis of his termination through the USPS's administrative procedure for resolving employment disputes, which led to mediation and resolution pursuant to the Settlement Agreement.

Although by signing the Settlement Agreement Cates very well may have voluntarily abandoned his right to participate in a procedure that meets the requirements of due process, the details of the USPS procedure are not before the Court.  Furthermore, Cates challenges the adequacy of the USPS's efforts within the framework of the Settlement Agreement itself.  For example, Cates contends that he informed the USPS "on more than one occasion" before the April 15, 2002 deadline that his former employer was "uncooperative in giving [him] the necessary information" that would have established he was not liable for more than one accident and that the USPS should have sought the information directly from the former employer.  (Am. Compl. IV. C at 1-2; Pl.'s Opp'n at 3.)   Accordingly, I cannot conclude as a matter of law that Cates was afforded due process but "simply chose not to avail [himself] of it, and thereby forfeited his right to complain."  *Segal v. City of New York*, 368 F.Supp.2d 360 (S.D.N.Y. 2005) *aff'd* 459 F.3d 207, 218 (2d Cir. 2006).[9]

3. Qualified Immunity

However, even if Cates' were able to show that he was not afforded sufficient post-deprivation due process, his constitutional claims against the Employee Defendants are barred by the doctrine of qualified immunity.  Here, Cates' own pleadings and the documents attached

---

[9] Although in *Segal* the Second Circuit concluded as a matter of law that the New York Department of Education's "C-31 administrative appeal" procedure affords teachers with a procedurally adequate post-deprivation hearing, it did so in the context of reviewing the district court's grant of summary judgment. *Segal*, 459 F.3d at 214.  There, both the District Court and the Circuit considered the specific procedural rights that would have been afforded to the plaintiff had she not voluntarily waived them. *Segal v. City of New York*, 368 F.Supp.2d 360, 362 (S.D.N.Y. 2005).

thereto make clear that the Employee Defendants would not have had a reasonable belief that their actions violated clearly established law. *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). Defendants Williams and Duncan-Smith relied upon two provisions of the USPS employment manual to make their determination that Cates was ineligible for the motor vehicle operator position, and Defendant Toniette Henry signed a USPS form settlement agreement and subsequently adhered to its terms. Because they adhered to established USPS employment policies, if there was any legal inadequacy in the due process afforded to Cates, it was not so apparent as to put a reasonable person on notice of the violation. *Id.* at 251. Consequently, Cates' potential due process claims against the Employee Defendants are barred by the doctrine of qualified immunity and must be dismissed.

       4. Timeliness of Cates' "Stigma-Plus" Claim

Cates' failure to file this action within the applicable three year statute of limitations is an independent basis for dismissal of his potential stigma-plus claim. "The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir. 1999) (citing *Owens v. Okure,* 488 U.S. 235, 251 (1989)). The Second Circuit has held that, in the governmental employment context, a stigma plus claim accrues when employment is terminated, because the alleged constitutional violation—i.e. termination *without* due process—is complete upon termination. *Brevot v. New York City Dept. Ed.*, 2008 WL 4726287 (2d Cir. 2008) (summary order).

Cates learned the basis of his termination on December 17, 2001. He did not file this action until January 22, 2008—more than seven years after his termination and far beyond the applicable limitation period. Even if Cates' termination is deemed to have occurred on the date that his attempts to obtain reinstatement administratively came to an end—i.e. the date of the EEOC Decision, January, 23, 2003—his complaint was filed nearly three years too late.

       a. Continuing Violations Doctrine

Most often applied in the discrimination context, "[t]he continuing violation doctrine delays the point at which the statute of limitations begins to run . . . until the last discriminatory act in furtherance of" the defendant's "continuous practice and policy of discrimination occurs." *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997) (quoting *Cornwall v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994)). The doctrine is inapplicable here, however, because the USPS's more recent refusals to hire Cates do not constitute an "ongoing policy or

practice" of constitutional violation, even if the denials are expressly based on the allegedly defamatory statements made in connection with Cates' 2001 termination. *Brevort v. New York City Dept. Ed.*, No. 04 Civ. 7959 (GEL), 2007 WL 690130 (S.D.N.Y. 2007), *aff'd* 2008 WL 4726287 (2d Cir. 2008). The constitutional claim alleges deprivation of a liberty interest *without adequate legal process* and is thus complete when the deprivation without due process occurs. *Id.* Here, the acts giving rise to Cates' potential constitutional claim were complete when he was terminated for allegedly falsifying his employment application and subsequently afforded what he claims to be insufficient process. Consequently, the continuing violation doctrine does not preserve the timeliness of Cates' potential due process claim.

      b. Equitable Tolling

"Under the doctrine of equitable tolling, a complainant may be allowed to file his or her claim outside the applicable limitations period if, because of some action on the defendant's part, the complainant was unaware that the cause of action existed." *Long v. Frank*, 22 F.3d 54, 58 (2d. Cir 1994). "[T]o merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir. 2002). "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, citations, and alterations omitted).

In opposition to the Defendants' motion to dismiss, Cates contends that the matters asserted in his Amended Complaint "need to be brought up" because "circumstances that were happening then [i.e. 2001 to 2003] may have impaired [his] ability to properly defend [himself] as far as awareness and mental capability." (Pl.'s Opp'n. at 5.) Cates contends that the following circumstances may have contributed to his failure to file this action until January 2008: his ongoing grief concerning his mother's death in April 2000, his recovery from alcoholism and liver disease, and the fact that he was in school and "living independently on a low income."

Cates' explanations do not, however, establish the type of "rare and exceptional circumstances" that warrant equitable tolling of a statute of limitations. *See, Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (generalized statement that plaintiff suffered from "paranoia, panic attacks, and depression" is "insufficient to justify any further inquiry into tolling.").

12

Furthermore Cates has not shown that he acted diligently to preserve his right to file suit during the period he seeks to have tolled.  *See Zerilli-Edelglass*, 333 F.3d at 81.  Although the Amended Complaint and the documents attached thereto evidence Cates' efforts to comply with the terms of the Settlement Agreement and pursue redress administratively, Cates does not make any allegations that indicate an effort to pursue or preserve his right to file suit in this court or any other.  Consequently, Cates' potential due process claim is barred by the statute of limitations and must be dismissed.

### D. Defamation Claim

To the extent that Cates' Amended Complaint alleges defamation claims against the Employee Defendants that are distinct from the stigma-plus due process claims addressed above, such claims are barred by the Federal Tort Claims Act ("FTCA") because these defendants were federal employees acting within the scope of their employment.

As discussed above, the United States is properly substituted for the individual named Defendants with respect to Cates' defamation claims. "It is ... 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Gildor v. U.S. Postal Service*, 179 Fed.Appx. 756, 758, 2006 WL 1228691, *1 (2d Cir. 2006) (quoting *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir.2004)).  Although under the FTCA the United States has consented to be sued for certain tortious acts, the FTCA's waiver of sovereign immunity does not apply to defamation claims which are explicitly excluded under the statute. *See* 28 U.S.C. § 2680(h)); *see also, Siegert v. Gilley*, 500 U.S. 226, 233-234 (1991) (noting a defamation suit against the United States is not allowed under the Federal Tort Claims Act "in the light of the exemption in [the FTCA] for claims based on defamation.")

Accordingly, Cates' claims of defamation must be dismissed for lack of subject matter jurisdiction. This result must obtain even though it leaves no defendant against whom Cates may pursue his claims of defamation. *See, B & A Marine Co.,* 23 F.3d at 715  (plaintiff "is precluded from asserting a libel action against [individual defendants] based on a tort they may have committed as agents or employees of the Government within the scope of their employment, notwithstanding that the United States is also immune") (citing *United States v. Smith,* 499 U.S. 160 (1991)).

13

E.  **Discrimination Claims**

1. Rehabilitation Act Claim

In his Original Complaint, Cates cites "Employment Discrimination (Reprisal, Alcoholism)" as a basis for federal court jurisdiction, which the Court construes to assert a claim of discrimination on the basis of the disability of alcoholism.  In his opposition to the instant motion, Cates maintains that he has been "in AA" for "over ten years" and today thinks clearer "after several years of sobriety."  (Aff. in Opp'n at 5.)

The Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (the "Act"), covers claims of disability discrimination against federal employers such as the USPS.  Section 504 of the Act provides that "an otherwise qualified handicapped individual" shall not be discharged from federally funded employment "*solely* by reason of his handicap." 29 U.S.C. § 794 (emphasis added).  Unless an individual's current use of alcohol prevents him from performing his job function, alcoholism may qualify as a disability for purposes of the Rehabilitation Act if the individual's "addiction substantially limits one or more of his ... major life activities." *Regional Econ. Cmty. Action Program, Inc.,* 294 F.3d at 46-47("Alcoholism, like drug addiction, is an 'impairment' under the definitions of a disability set forth in the ... Rehabilitation Act."); *Gilmore,* 384 F.Supp.2d at 611 ("[C]urrent ... use disqualifies a person from protection under [the Rehabilitation Act].").

Here, Cates has not alleged any facts that support an inference that his status as a recovering alcoholic substantially limits a major life activity.  Indeed the gravamen of Cates' complaint is that he was qualified to serve as a motor vehicle operator and such allegations undermine any contention that his alcoholism impaired is ability to engage in a "major life activity."

However, even if Cates were able establish that his status as a recovering alcoholic qualified him as a "handicapped individual" within the meaning of the Act, he was not terminated "*solely* because of his handicap."  Cates offers no allegations that he was terminated from the USPS because he was a recovering alcoholic.  Rather, Cates' own pleadings demonstrate that USPS terminated Cates' employment on the basis of his unsatisfactory driving record, as indicated on the PS Form 50 ("Notice of Personnel Action") and the December 17, 2001 Letter from Defendant Toniette Henry, each of which is attached to Cates' Amended Complaint.  Accordingly, the Amended Complaint fails to allege a *prima facie* case of disability discrimination and his claim under the Rehabilitation Act must be dismissed. *Sedor v. Frank*, 42

F.3d 741, 746 (2d Cir. 1994) (where employment decision was "motivated at least in part by a factor other than the plaintiff's disability, the Rehabilitation Act claim must be rejected.")

    2. Title VII Claim

"Title VII is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex, or national origin." *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996). Although Cates' does not claim he was terminated from the USPS on the basis of his race, religion, sex, or national origin, the Defendants construe his Amended Complaint to assert a Title VII claim and Cates does not contend otherwise in opposition to the instant motion.   However, neither of the Complaints filed by Cates contain any mention of his race, religion or national origin, and there is no allegation that USPS took adverse employment actions against Cates on the basis of such criteria.  Neither Complaint contains an allegation that Cates was terminated in retaliation for opposing conduct that he reasonably believed to violate Title VII or any other law, the type of "protected activity" required to make out a prima facie case of discriminatory retaliation, *see Reed v. A.W. Lawrence & Co., Inc.* 95 F.3d 1170, 1178 (2d Cir. 1996), or that he was subjected to harassment based on a prohibited ground of discrimination, as is necessary to sustain a hostile workplace claim under Title VII. *See Monterroso v. Sullivan & Cromwell, LLP*, 591 F.Supp.2d 567, 584 (S.D.N.Y. 2008).  Furthermore, the USPS has offered a legitimate, non-discriminatory reason for its employment actions:  namely, that Cates' driving record disqualified him for USPS positions that require operation of a motor vehicle.  Consequently, to the extent he asserts them, Cates' discrimination claims under Title VII claim must be dismissed.

    3. Timeliness of Cates' Discrimination Claims

Cates' claims under the Rehabilitation Act and Title VII are also time-barred under the applicable statutes of limitation.  Individuals seeking relief under Title VII may only bring an action for employment discrimination after filing a timely charge with the EEOC and receiving a "right-to-sue letter" from that agency. 42 U.S.C. § 2000e-5(e). Title VII allows a plaintiff 90 days following issuance of a "right-to-sue letter" within which to commence the action. 42 U.S.C. § 2000e-5(f)(1). "The 90-day period is 'strictly enforced.'" *Hughes v. Elmira College* 584 F.Supp.2d 588, 589 (W.D.N.Y. 2008) (quoting *Holmes v. NBC/GE,* 914 F.Supp. 1040, 1042 (S.D.N.Y. 1996).   Cates does not dispute that he received a "right-to-sue" letter from the EEOC

15

on January 23, 2003 and that he filed this action on January 22, 2008, far after the 90-day period had expired.[10]

In New York, the three-year statute of limitations for personal injury actions, N.Y. CPLR § 215(5), applies to Rehabilitation Act claims. *Bates v. Long Island R. Co.* 997 F.2d 1028, 1037 (2d Cir. 1993). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* Thus, 'the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.'" *Id.* (quoting *O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 820 (2d Cir.1985)). Therefore, Cates' disability discrimination claims under the Rehabilitation Act, accrued as of the date Cates received notice of his termination, December 17, 2001, and to be timely this action must have been filed by December 17, 2004.

As discussed above, neither equitable tolling or the continuing violation doctrine absolve Cates from his delay in filing suit. *See Gannon v. Continuum Health Partners, Inc.*, No. 06 Civ. 5133(CM) 2007 WL 2040579, *4 -5 (S.D.N.Y. 2007) (equitable tolling based on mental illness and cancer not warranted where plaintiff filed suit one year after EEOC sent "right-to-sue letter"); *Nghiem v. U.S. Dept. of Veterans Affairs*, 451 F.Supp.2d 599, 607 n.4 (S.D.N.Y. 2006) (continuing violation doctrine inapplicable where plaintiff filed a timely EEO charge in connection with an alleged discriminatory termination, and then sought to toll the time period provided in the regulations for filing a complaint in federal court by alleging ongoing discrimination that occurred post-termination.)

4.      Preclusive Affect of Settlement Agreement

Cates' potential claims for wrongful discharge under Title VII or the rehabilitation act are also barred by the doctrine of *res judicata,* which precludes parties from relitigating issues raised in a previous action where there is a final judgment on the merits. The doctrine of *res judicata* applies to settlement agreements in the discrimination context. *Gentile v. Potter* 509 F.Supp.2d 221, 232 (E.D.N.Y. 2007) (citing *Greenberg v. Bd. of Governors of Fed. Reserve Sys.,* 968 F.2d 164, 168 (2d Cir.1992)). "The preclusive effect of a settlement is measured by the intent of the parties to the settlement." *Greenberg* 968 F.2d at 168.

---

[10] Cates' claims are not made timely by his more recent correspondence with the USPS or the right-to-sue letter he received from the EEOC on October 18, 2007, because his claims concern allegedly discriminatory employment actions taken in 2001. The "timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision," *Morse v. University of Vermont*, 973 F.3d 122, 125 (2d Cir. 1992), which in this case occurred in 2001.

Here, the Settlement Agreement states that it constitutes a "complete and final settlement of the subject matter" raised by Cates' EEO Complaint: namely, the basis for his termination and Cates' attempts to obtain reinstatement. The resolution contemplated by the Settlement Agreement is clear and unambiguous: "Once the USPS has supplied the [specified information] to the USPS, the USPS agreed to "re-evaluate Mr. Cates' application for Motor Vehicle Operator." The Court thus finds that the relitigation of settled claims relating to the circumstances of Cates' termination is barred by the preclusive effect of the Settlement Agreement. *See Foulke v. Potter*, No. 03 Civ. 6176 (JF), 2005 WL 1712229, 2 (E.D.N.Y. 2005) ("To the extent Plaintiff asserts substantive discrimination claims that were addressed by the Settlement Agreement, those claims are precluded by that agreement."); *Maysonet v. Thompson,* 2005 U.S. Dist. LEXIS 7311, at *17-18 (S.D.N.Y., Apr. 25, 2005); *Johnson v. Frank,* 828 F.Supp. 1143, 1151 (S.D.N.Y.1993) ("A valid agreement settling [Plaintiff's] claim bars subsequent litigation on that claim.")

### F. Breach of Contract Claim

Finally, to the extent that Cates' Amended Complaint asserts a claim of breach of the Settlement Agreement, such a claim must be dismissed because Cates acknowledges that he did not supply the requisite information by the deadline set forth in that agreement. The Settlement Agreement is unambiguous that the USPS was only obligated to reconsider Cates' termination if he provided documents from his former employer or its insurance carrier that showed he was not liable for more than one at fault accident while employed by New York Airport Service. Cates contends that "the point of the matter is that [he] showed effort" and the Court sympathizes with Cates to the extent that USPS personnel either failed or refused to extend the timeline for delivery of the required information after he informed them that his former employer was dragging its feet in providing the information. However, the Court is not at liberty to rewrite the Settlement Agreement and Cates has proffered no allegations that support an inference that USPS did not adhere to its terms, even if literal adherence to those terms worked to Cates' detriment. Accordingly, Cates' claim for breach of the Settlement Agreement must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint is GRANTED. Pursuant to the discussion set forth in Footnote 6 of this Opinion and Order, and

17

to satisfy their obligations under Local Rule 7.1(c), the Court instructs the Assistant United States Attorney assigned to this case to serve Plaintiff with printed copies of the unreported decisions cited in their submissions to this Court within two (2) days of the date of this Opinion and Order.  Plaintiff shall have ten (10) business days from the date he is served with such unreported cases to file a supplemental opposition based solely on arguments in opposition to application of legal principles set forth in the unreported cases cited by the Government.  If such a supplemental opposition is timely filed, the Government shall have five (5) business days to file a supplemental reply thereto.   If no supplemental opposition is filed as of the date that is ten (10) business days after the date that Plaintiff is served with the aforementioned materials, the Clerk of the Court is instructed to close this case and any open motions and remove this case from my docket.   The Court expects that the U.S. Attorneys' Office and all other counsel who oppose *pro se* litigants will strictly adhere to Local Rule 7.1(c) in the future.

**SO ORDERED**
**New York, New York**                                     _____
**March __, 2009**                                                              **U.S.D.J.**

to satisfy their obligations under Local Rule 7.1(c), the Court instructs the Assistant United States Attorney assigned to this case to serve Plaintiff with printed copies of the unreported decisions cited in their submissions to this Court within two (2) days of the date of this Opinion and Order.  Plaintiff shall have ten (10) business days from the date he is served with such unreported cases to file a supplemental opposition based solely on arguments in opposition to application of legal principles set forth in the unreported cases cited by the Government.  If such a supplemental opposition is timely filed, the Government shall have five (5) business days to file a supplemental reply thereto.   If no supplemental opposition is filed as of the date that is ten (10) business days after the date that Plaintiff is served with the aforementioned materials, the Clerk of the Court is instructed to close this case and any open motions and remove this case from my docket.  The Court expects that the U.S. Attorneys' Office and all other counsel who oppose *pro se* litigants will strictly adhere to Local Rule 7.1(c) in the future.

SO ORDERED
New York, New York
March 19, 2009

_____
U.S.D.J.